[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff has filed for a dissolution of her marriage with the defendant. Based upon the evidence presented at a contested hearing in this matter, the court makes the following findings.
The plaintiff and the defendant married on July 20, 1979 in North Haven, Connecticut. The parties have two children who are issue of the marriage. One child, Danielle is fifteen years old and still a minor. The other child, Nicole, is now nineteen years old.
The plaintiff is forty two years old and in good health. He has been employed as a printer for the past twenty two years and he currently CT Page 2851 works as a printer at MLK Business Forms, Inc. The plaintiff receives a weekly gross income of $782 and a weekly net income of $579 from his employment.
The defendant is forty one years old. She is in relatively good health. She does suffer from osteoarthritis but this condition does not prevent her from working. The defendant presently works part-time as a waitress at the TA Travel Center. She works twelve hours each week and she receives wages and tips averaging $92 weekly. Previously, the defendant was also employed as a waitress at the Route 80 Diner where she worked an additional twenty-four hours per week and received wages and tips averaging $194 weekly. The defendant left her job at the Route 80 Diner in the fall of 2000 because she needed to transport her child Danielle to confirmation classes. Those classes have concluded and the defendant is available to work full time as a waitress. In the recent past, the defendant has earned $286 each week as a waitress working thirty six hours each week. The defendant testified at trial that she believes that she can earn $300 weekly working full-time. Based on her prior work history and her testimony at trial, I find that the defendant has an earning capacity of $300 gross weekly income, which results in a net weekly income of $276.
The only significant asset of the marriage is the marital home at 72 Savoy Street, East Haven, Connecticut. The property has a fair market value of $110,000 with an existing mortgage balance of $29,378. The parties have entered into a contract to sell the property and a closing date is scheduled for February 28, 2001. The down payment for the marital home was provided by the plaintiff from funds he received upon the sale of a condominium that he had purchased prior to the marriage.
The parties also own a timeshare at Water's Edge Resort in Westbrook, Connecticut which is presently valued at approximately $5,000. In addition, the plaintiff has two small pensions totaling $1,523.
Both parties agree that, for all intents and purposes, their marriage broke down approximately eight years ago. They disagree on who is at fault for that breakdown. The plaintiff claims that the defendant engaged in a long term, extramarital affair that severed their relationship. The defendant contends that the plaintiff frequently consumed alcohol to excess and, when intoxicated, verbally and physically abused her. The court finds based on the evidence presented that both parties exhibited inappropriate conduct that contributed to the breakdown of the marriage and that both parties share the blame for its collapse.
One of the disputed issues at trial concerned the defendant's request that the plaintiff reimburse her the expense she incurred in purchasing a CT Page 2852 new stove, refrigerator and microwave for the marital home. The defendant purchased these items in 1999 with a credit card. A balance of approximately $3,000 remains on that credit card. The contract for sale of the marital home requires that these appliances remain with the house upon sale. The defendant asserts that the plaintiff agreed to reimburse her for the cost of these items when the home was listed for sale. The plaintiff contends that he should not be responsible for these items because he paid the mortgage and taxes on the home throughout the marriage.
During the marriage, both parties jointly contributed toward payment of the expenses of the household. The defendant paid for groceries, oil and clothing while the plaintiff paid the mortgage, real estate taxes and all other household expenses. Throughout the marriage, the parties shared household expenses. They should continue to share the liabilities of the household at the time of dissolution.
In determining the orders contained herein, I have carefully considered all the relevant statutory criteria, including those in General Statutes § 46b-81 as they relate to the assignment of property and § 46b-82
as they relate to the award of alimony, and § 46b-84 and the child support guidelines as they relate to the award of child support. The court enters the following orders:
1. The marriage is ordered dissolved on the grounds of irretrievable breakdown.
2. In accordance with the agreement of the parties, the parties are awarded joint legal custody of the minor child, Danielle, with primary physical residence of the child with the defendant. The plaintiff is awarded rights of reasonable and flexible visitation. Both parties are ordered to successfully complete the parenting education program within sixty days of this dissolution judgment.
3. In accordance with the Child Support and Arrearage Guidelines, the plaintiff shall pay child support to the defendant in the amount of $129 weekly.[1] The plaintiff shall be responsible to pay 53% and the defendant shall be responsible to pay 47% of any unreimbursed medical and dental expenses for the minor child that exceed one hundred dollars per calendar year. The plaintiff shall maintain medical insurance for Danielle to the extent it is available at reasonable cost through his employer.
4. The plaintiff shall pay to the defendant periodic alimony in the amount of $86 weekly. Alimony shall terminate upon the death of either party, remarriage by the defendant, or cohabitation by the defendant. CT Page 2853
5. So long as the plaintiff is required to pay alimony or child support to the defendant, he shall maintain $50,000 worth of life insurance, naming the defendant as beneficiary, and he shall provide annual confirmation to the defendant that the insurance is being maintained.
6. The plaintiff is awarded the child dependency exemption for Danielle for as long as he is obligated to pay child support.
7. The marital home at 72 Savoy Street, East Haven, Connecticut shall be sold. The plaintiff and the defendant shall each receive one-half of the net proceeds after sale. Net proceeds are defined as the funds remaining after payment of any mortgages, including any home equity loans, liens, and encumbrances, and the usual and customary costs associated with a sale. The court shall retain jurisdiction over the sale of the property.
8. Each of the parties is awarded sole ownership of the motor vehicle currently in their respective possession. The parties shall promptly execute any documents necessary to effectuate this order.
9. The timeshare at the Water's Edge Resort shall be immediately placed on the market and sold. The plaintiff and the defendant shall each receive one-half of the net proceeds after sale. Net proceeds are defined as the funds remaining after payment of any mortgages, liens, and encumbrances, and the usual and customary costs associated with a sale. The court shall retain jurisdiction over the sale of the property.
10. The defendant is awarded a one-half interest in the retirement funds held by the plaintiff. The defendant shall draft, if necessary, a Qualified Domestic Relation Order (QDRO) to effectuate this award. The draft shall be submitted to the plaintiff for his review and to the court for its approval. The court shall retain jurisdiction in order to enforce this provision.
11. Each of the parties shall be solely responsible for payment of the liabilities listed on their respective financial affidavits, except that the plaintiff is responsible for $1,000 of the credit card liability incurred for the purchase of appliances listed on the defendant's affidavit.
12. Each of the parties shall retain the personal property currently in their respective possession.
13. Each of the parties shall be responsible for the payment of their respective attorney's fees. CT Page 2854
BY COURT
Judge Jon M. Alander
 STATE OF CONNECTICUT COMMISSION FOR CHILD SUPPORT GUIDELINES WORKSHEET for the Connecticut Child Support and Arrearage Guidelines
Mother Father Custodian Theresa Henninger David Henninger [] MOTHER [] FATHER
OTHER CUSTODIAN Court Superior Court D.N. Case No. Number of Children 1 Name of Child Date of Birth Name of Child Date of Birth Danielle
I. NET INCOME (Weekly amounts) Theresa David 1. Gross income (attach verification) $300 $782 2. Federal income tax (allowable exemptions, deductions 
credits) 1 115 2a. Eliminate refundable earned income credit on line 2 0 0 3. State and local income tax (allowable exempt, deductions, Cr) 0 29 4. Social Security tax 19 48 4a. Mandatory retirement 0 0 5. Medicare tax 4 11 6. Health insurance premiums (other than child) 0 0 7. Mandatory union dues or fees 0 0 8. Non-arrearage payments — court ordered alimony child support 0 0 9. Imputed support obligation for qualified child 0 0 (Current spt all children/total children X #qualified children) 10. Sum of lines 2-9 $24 $203 11. Net Income (line 1 minus line 10) $276 $579
 II. CURRENT SUPPORT
12. Combined net weekly income (rounded to nearest $10) $860
13. Basic child support obligation (from schedule) $191
14. Check here if noncustodial parent is a low-Income obligor CT Page 2855 15. Child's health Insurance premium $0 $0 16. Total current spt obligation (line 13 minus noncustodial parent's line 15 amount if line 14 is checked-line 13 + line 15 total for all other cases) $191 17. Each parent's share of line 12 (If line 14 is checked, skip this line and line 19, and enter the line 16 amount in the noncustodial parent's column on line 18) 32.67% 67.33% 18. Each parent's share of the total current support obligation (line 17 times line 16 for each parent) $62 $129 19. Health insurance premium adjustment $0 20. Social Security dependency benefits adjustment $0 21. Sum of lines 19 and 20 (for each parent) $0 22. Presumptive current support amounts $129 23. Recommended current support order(Noncustodial parent only. If different from line 22 amount, explain on line 47) $129
D.N. Case No. Henninger Theresa David
III. UNREIMBURSED MEDICAL EXPENSE $0 $0 24. Net disposable income (line 11 plus line 23 for custodial parent; line 11 minus line 23 for noncustodial) $405 $450
25. Each parent's share of combined net disposable income (each parent's line 24 divided by sum of line 24 amounts) 47.37% 52.63%
IV. CHILD CARE CONTRIBUTION
26. Qualifying costs (enter contribution amount on line 43) $0 $0
V. ARREARAGE
27. Delinquencies on current support orders $0 28. Unpaid court-ordered arrearages 0 29. Support due for periods prior to support action (not court-ordered) 0 30. Total arrearages $0
VI. ARREARAGE PAYMENT
31. Current support order from line 23 (or imputed support obligation if there is no current support order or child is living with the obligor) $0 32. 20% of line 31 $0 — (if line 14 is checked, skip line 32 and go to line 37) — (if the child for whom the arrearage is owed is CT Page 2856 deceased, emancipated, or over 18, skip line 32 and go to line 39) — (if the child is living with the obligor, skip lines 33-39 and: (1) if the obligor's gross income is not more than 250% of poverty level enter $1 on line 40; OR (2) if the obligor's gross income is greater than 250% of poverty level, enter line 32 amount on line 40) 33. Obligor's line 11 amount $0 34. 55% of line 33 0 35. Line 34 minus line 31 0 36. Lesser of line 32 or line 35 (Enter here and on line 40 and skip lines 37-39) 0 37. 10% of line 31 0 38. Greater of line 37 or $1 (Enter here and on line 40) 0 39. 50% of line 31 (Enter here and on line 40) 0 40. Recommended arrearage payment $0 (If different from line 45, explain on line 47)
VII. ORDER SUMMARY
41. Current support order $129 42. Unreimbursed medical expense order $0 43. Child care contribution $0
 To To State Family 44. Total arrearage $0 $0 45. Arrearage payment order $0 $0 46. Total child support award: $129
 VIII. DEVIATION CRITERIA
47. Reasons for deviation from presumptive support amounts and/or arrearage guideline:
Prepared By Title of Preparer Date Prepared Judge Jon Alander February 21, 2001